

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

DR. MICHAEL FERNANDEZ, D.D.S., LTD.,
et al.,

        **Plaintiffs,**

        **v.**                     **CIVIL ACTION NO. 2:23-cv-69**

STEPHEN C. BRICH, P.E.,
et al.,

        **Defendants.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Stephen C. Brich, P.E., and Lori A. Snider's ("Defendants") Motion to Dismiss Plaintiffs' First Amended Complaint and a Supporting Memorandum of Law. ECF No. 16 ("Mot. Dismiss"); ECF No. 17 ("Defs.' Mem. Supp."). Defendants move to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Mot. Dismiss. Having reviewed the parties' filings in this case, the Court finds that a hearing on this Motion is not necessary, and this matter is now ripe for judicial determination. *See* E.D. Va. Local Civ. R. 7(J); Mot. Dismiss; Defs.' Mem. Supp.; ECF No. 19 ("Pls.' Opp'n"); ECF No. 20 ("Defs.' Reply"). For the reasons stated herein, Defendants' Motion to Dismiss is **GRANTED IN PART, DENIED IN PART, and DISMISSED IN PART** as moot. Plaintiffs' Amended Complaint, ECF No. 12 ("Am. Compl."), is **DISMISSED** in full.

### I.      FACTUAL AND PROCEDURAL HISTORY

On February 22, 2023, Dr. Michael Fernandez, D.D.S., Ltd., a Division of Atlantic Dental Care, and Dr. Miguel Fernandez, D.D.S. ("Plaintiffs") filed a Complaint against Defendants. ECF

No. 1 ("Compl."). Plaintiffs later filed an Amended Complaint on April 12, 2023. Relevant to Defendants' Motion to Dismiss and stated in the light most favorable to Plaintiff, the following facts are drawn from the Amended Complaint and attachments thereto. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Defendant Stephen C. Brich, P.E., is the Commissioner of Highways for the Commonwealth of Virginia and Chief Executive Officer of the Virginia Department of Transportation. Am. Compl. ¶ 8. Defendant Lori A. Snider is the State Right of Way and Utilities Director of the Virginia Department of Transportation. *Id.* ¶ 9. The Virginia Department of Transportation ("VDOT") is an agency of the Commonwealth of Virginia. *Id.* ¶ 11. VDOT acts as the "State agency" and "displacing agency" for the Interstate 264 Improvements Project ("the Project") as defined in 42 U.S.C. § 4601(3) and (11). *Id.* ¶ 11. VDOT received federal financial assistance for the Project. *Id.* ¶ 75.

Dr. Miguel Fernandez is a dentist who has operated his practice, Dr. Michael Fernandez, D.D.S., Ltd. ("the Practice"), in Virginia Beach, Virginia. *Id.* ¶ 7. For several years, Dr. Fernandez operated the Practice at 5121 Greenwich Road, Suite 102 ("Greenwich Road Office") in Virginia Beach. *Id.* ¶ 15. Plaintiffs leased the premises for the Greenwich Road Office with the most recent lease term running from August 1, 2007, to July 31, 2017, plus a five-year option to lease until July 31, 2022. *Id.* ¶ 16.

In a December 2015 letter, VDOT informed Dr. Fernandez that Plaintiffs would be required to relocate the Practice from the Greenwich Road Office because VDOT planned to purchase a right of way for the Project. *Id.* ¶ 17; Ex. A.[1] The letter stated Plaintiffs were "eligible for relocation benefits as specified by law." Ex. A; Am. Compl. ¶ 18.

---

[1] Citations to exhibits refer to those attached to Plaintiffs' Amended Complaint. The Court employs the pagination assigned by the CM/ECF docketing system.

In January 2016, O.R. Colan Associates ("O.R. Colan"), an agent of VDOT, sent Plaintiffs listings for potential new office locations. Am. Compl. ¶ 19; Ex. B at 2. O.R. Colan noted that the listings "may or may not be suitable for the operation of your business" and said Plaintiffs were "solely responsible for verifying" the suitability of proposed relocation sites for the Practice. Ex. B at 2; Am. Compl. ¶ 20. None of the locations provided were suitable for a dental practice. Am. Compl. ¶¶ 21, 26. O.R. Colan sent Plaintiffs additional listings in February 2016, but again none were suitable for the Practice. *Id.* ¶¶ 22–23, 26; Ex. C.

On April 14, 2016, VDOT recorded a Certificate of Take and acquired defeasible title to the Greenwich Road Office. Am. Compl. ¶ 24. Ms. Snider signed the Certificate of Take on behalf of VDOT. *Id.* On April 18, 2016, VDOT sent Plaintiffs a letter instructing them to vacate the Greenwich Road Office within 30 days. *Id.* ¶ 25; Ex. D. The letter was signed by Randy S. Friedland, Regional Right of Way Manager and subordinate to Ms. Snider. Am. Compl. ¶ 25; Ex. D.

After Dr. Fernandez conducted an extensive but unsuccessful search for suitable locations for the Practice on his own, he engaged a real estate broker for assistance and eventually located a new space for the Practice ("New Office"). Am. Compl. ¶¶ 26–28. The New Office was not built for use as a dental office and required significant work to make it suitable for the Practice. *Id.* ¶ 29. While the Greenwich Road Office measured approximately 1,600 square feet and had many building code requirements "grandfathered," the New Office was approximately 3,200 square feet and required additional costs to comply with building codes and Americans with Disabilities Act regulations. *Id.* ¶ 37. Dr. Fernandez engaged Patterson Dental to design the layout of the New Office; Waller Todd & Sadler Architects to implement the new layout and plan necessary renovations; John W. Fowler, P.E., to oversee construction; and Campo Construction Company to

3

build out the New Office, after determining that Campo Construction Company was the lowest of several bidders for the job. *Id.* ¶¶ 30–31; Exs. E–H.

Despite the significant work necessary to make the New Office suitable, VDOT would not allow Plaintiffs to remain in the Greenwich Road Office until the New Office was complete. Am. Compl. ¶ 32. On behalf of VDOT, Commissioner Brich sought to evict Dr. Fernandez from the Greenwich Road Office. *Id.* ¶ 33. Dr. Fernandez filed defenses against the eviction and requested a hearing on the matter. *Id.* Commissioner Brich sought summary judgment, which Plaintiffs allege was done "to deny Dr. Fernandez an opportunity to be heard." *Id.* ¶ 33. The trial court denied the request for summary judgment, and Plaintiffs remained in the Greenwich Road Office until the New Office was complete in March 2017, at which time Plaintiffs moved into the New Office and began seeing patients. *Id.* ¶¶ 34, 36.

Prior to Plaintiffs' move, VDOT preapproved reimbursement of the "costs to be incurred in moving personal property not included in the specialty of" the Practice in the amount of $1,987.18 based on a low bid from a moving company. Ex. I; Am. Compl. ¶ 35. VDOT told Plaintiffs that a check would be ordered for reimbursement after "receipt of the [Moving Cost Payment] claim form, a bill or receipt from the moving company, and [VDOT's] inspection of the vacated property." Ex. I.

Plaintiffs incurred costs for moving computers, telephones, personal property, and specialty dental equipment; disconnecting and reconnecting alarm, computer, network, server, and phone systems; modification of utilities; substitute property; and painting and flooring. Am. Compl. ¶ 38; Ex. J. In a September 13, 2017 letter to VDOT, Plaintiffs claimed a total reimbursement amount of $567,278.87 and provided supporting documentation. Am. Compl. ¶ 38;

4

Ex. J at 2–10. In November 2017, Plaintiffs revised their total reimbursement claim upward to $567,793.87 and provided additional supporting documentation. Ex. K.

VDOT responded a few days later, saying it would "expeditiously and carefully review these many documents so that we can make an informed determination of any reimbursements available to Dr. Fernandez, the displaced person." Ex. L; Am. Compl. ¶ 40. VDOT noted it had "a couple of questions and concerns that were brought to [Plaintiffs' counsel's] attention, to which [Plaintiffs' counsel] advised [he] would look into and get back with [VDOT]." Ex. L. VDOT further stated it would "inform [Plaintiffs' counsel] in writing once a determination has been made." *Id.*

In December 2017, VDOT requested additional information and clarification on Plaintiffs' claims. Am. Compl. ¶ 40; Ex. M. Plaintiffs responded in March 2018 with additional documentation. Am. Compl. ¶ 41; Ex. N. On March 13, 2018, Plaintiffs requested payment on their outstanding claims, including the "cost of moving the personal property, reestablishment costs, and cost to move computers, phones, etc." Ex. O; Am. Compl. ¶ 41. On March 19, 2018, VDOT responded to Plaintiffs' March 13 letter stating VDOT was "in the process of reviewing submitted claims." Ex. P; Am. Compl. ¶ 42. VDOT noted the parties had discussed the matter on March 15, 2018. Ex. P.

In early April 2018, Plaintiffs informed VDOT that no payment had been received, including the preapproved reimbursement for a commercial mover, and requested confirmation that VDOT would "finalize review of [Plaintiffs'] submission by April 20, 2018." Ex. Q; Am. Compl. ¶ 42. In an April 17, 2018, letter, VDOT informed Plaintiffs that "$35,346.68 for claim of relocation payment had been approved" and that a check in that amount would be ordered. Ex. R at 2–3; Am. Compl. ¶ 43. VDOT stated that although "additional documentation was requested for

5

several items in order to move forward with the review process," VDOT "was still not in receipt of the . . . requested documentation that was outlined in [VDOT's accompanying] email." *Id.* at 5. The accompanying e-mail listed several questions and notes regarding documentation required before VDOT could "continue with the review process and make additional determinations." *Id.* at 2.

In a May 8, 2018 letter, VDOT acknowledged that Plaintiff provided some necessary forms, but said that "before the check can be released[,] requested receipts and documentation will still be needed." Ex. S at 2; Am. Compl. ¶ 45. VDOT's letter listed several requests for documentation and included VDOT's own calculations of Plaintiffs' benefit claims. Ex. S at 2–8.[2] The next day, VDOT approved a $255.00 reimbursement for Dr. Fernandez's time spent planning the move and again requested further information "[i]n continuation of the review for Dr. Fernandez's claim for payment." Ex. T at 2–3; Am. Compl. ¶ 48.

On May 24, 2018, VDOT mailed Plaintiffs a check for $35,346.68. Ex. R at 12–14. Plaintiffs received the check and the April 17, 2018 letter approving the reimbursement from employees in VDOT's Right of Way Division. Am. Compl. ¶ 44; Ex. R at 2, 5–6, 12.

In a June 15, 2018 letter, VDOT informed Plaintiffs that it was "unable to proceed any further in the review of Dr. Fernandez's previously submitted relocation claim until [it] receive[s] information requested in [VDOT's] letter dated May 9, 2018 and follow up e-mail dated June 5, 2018." Ex. U at 2; Am. Compl. ¶ 48. VDOT advised Plaintiffs of their "right to appeal in whole or in part" if they "are not in agreement with any determinations made by [VDOT]" and said they "must submit [their] appeal in writing . . . within 90 days of this notice." Ex. U at 3. VDOT

---

[2] In part, VDOT requested information regarding Plaintiffs' substitution of property claim, Ex. S at 2–3, but Plaintiffs could not answer the request because VDOT possessed the relevant property after it filed the Certificate of Take and tried to evict Plaintiffs from the Greenwich Office. Am. Compl. ¶ 45.

attached a copy of VDOT's appeal process regulations under 24 Va. Admin. Code § 30-41-90. *Id.* at 3, 6.

On June 27, 2018, VDOT reminded Plaintiffs of its May 9, 2018, and June 15, 2018, requests for additional documentation "needed in order to continue with the review process" of Plaintiffs' claim for payment.[3] Ex. V at 2. VDOT stated it "cannot move forward until all requested information is received." *Id.* at 2. VDOT's letter was signed by a subordinate to Ms. Snider. Am. Compl. ¶ 52; Ex. V at 2. Plaintiffs allege this letter "confirm[s] no determination had been made" regarding "most all of the claims [Plaintiffs] submitted." Am. Compl. ¶¶ 51–53.

In June 2018, Plaintiffs filed suit against Commissioner Brich in the Circuit Court for the City of Virginia Beach seeking reimbursement of Plaintiffs' relocation costs. *Id.* ¶ 54. The Commissioner filed a demurrer arguing in part that Dr. Fernandez failed to exhaust his administrative remedies before seeking judicial review. *Id.* In November 2018, the court sustained the demurrer and dismissed the suit after finding the Virginia Relocation Assistance Act, Virginia Code § 251.400 *et seq.* ("VRAA"), did not create an independent cause of action. *Id.*; *see Michael Fernandez, D.D.S., Ltd. v. Comm'r of Highways*, No. CL18-3017, 2018 WL 11033625, at *2–*4 (Va. Cir. Ct. Nov. 28, 2018). The Supreme Court of Virginia affirmed the Circuit Court's decision on June 17, 2020. Am. Compl. ¶ 54; *see* Ex. X at 8–12 (containing copy of *Michael Fernandez, D.D.S., Ltd. v. Comm'r of Highways*, No. 191056 (Va. filed May 28, 2020)); *Michael Fernandez, D.D.S., Ltd. v. Comm'r of Highways*, 298 Va. 616, 842 S.E.2d 200 (2020).

In December 2020, Plaintiffs wrote to counsel for Commissioner Brich to ask whether VDOT "intends to make a final determination on the remaining costs submitted by Dr. Fernandez." Ex. W at 2; Am. Compl. ¶ 55. In January 2021, counsel for the Commissioner responded via letter,

---

[3] VDOT also noted it had not received a completed copy of the claim form provided on June 15, 2018 for the approved $255.00 reimbursement. Ex. V at 2.

stating that "VDOT already provided its written determination with regard to [Plaintiffs'] claim" in its June 15, 2018 letter. Ex. X at 2; Am. Compl. ¶ 56. The Commissioner asserted that per the Supreme Court of Virginia's opinion, "Fernandez failed to exhaust the administrative remedies afforded to him under 24 VAC § 30-41-90." Ex. X at 2 (quoting *Fernandez*, No. 191056, slip op. at 5); Am. Compl. ¶ 56. According to the Commissioner, Plaintiffs "had 90 days from receipt of the June 15, 2018 letter in order to appeal but chose not to do so," and an attempt to appeal "would be untimely." Ex. X at 3. A subordinate to Ms. Snider was copied on the Commissioner's letter. Am. Compl. ¶ 56.

Plaintiffs responded to the Commissioner a few weeks later, asserting that VDOT never "provided a final determination regarding the majority of Dr. Fernandez's claim." Ex. Y at 2. Plaintiffs argued the May 9, 2018 letter indicated VDOT's review was still underway and no determination had been made. *Id.* at 2; Am. Compl. ¶ 57 (citing Exs. T, U, V, Y). Plaintiffs asserted they could not have filed an appeal because VDOT never provided a final determination. Ex. Y at 2.

In an April 2021 letter to Ms. Snider, Plaintiffs reviewed the history of their claims and requested a final determination from VDOT. Am. Compl. ¶ 58; Ex. Z at 2. The letter references a discussion between Plaintiffs' counsel and Ms. Snider. Ex. Z at 2. Ms. Snider responded in May 2021, stating that VDOT requested additional information and documentation on March 15, 2018, and April 27, 2018, but never received the information requested, leaving it "unable to proceed any further in the review of Dr. Fernandez's previously submitted claims." Ex. AA at 2–3. Ms. Snider said VDOT "consider[ed] this relocation concluded." *Id.* at 3.

Nevertheless, in May 2021, Ms. Snider sent Plaintiffs a letter requesting documents and information to determine whether certain moving costs were reimbursable. Ex. BB at 2–4

8

("Whatever you can send I will have reviewed to determine it would be a reimbursable cost."). Plaintiff responded in June 2021 with supporting information and documents and said they were collecting additional materials on costs associated with Campo Construction. Ex. CC. In December 2021, Plaintiffs provided those materials and explained the Campo Construction costs. Ex. DD.

On February 7, 2022, Plaintiffs asked Ms. Snider for an update regarding VDOT's review of the information provided in the June and December 2021, letters. Ex. EE. On April 7, 2022, Plaintiffs provided Ms. Snider with a national relocation expert's analysis of their reimbursable expenses. Ex. FF. Plaintiffs sent follow up letters to Ms. Snider in April and June 2022 to confirm receipt of the expert's analysis, but Plaintiffs received no response. Exs. GG, HH. In the June letter, Plaintiffs asserted they had not received a final determination on their claims and asked when VDOT would issue one. Ex. HH at 2.

In the fall of 2022, Plaintiffs held a phone call with Virginia Deputy Attorney General Leslie Haley. Am. Compl. ¶ 66. On behalf of VDOT, Deputy Attorney General Haley told Plaintiffs that if they had not hired attorneys to represent them, filed suit against VDOT, and tried to enforce their rights, VDOT would have paid Plaintiffs more in relocation assistance and benefits. *Id.*

Plaintiffs commenced this action by filing a Complaint on February 22, 2023, and they later filed the Amended Complaint on April 12, 2023. *See* ECF Nos. 1, 12. Defendants filed the instant Motion to Dismiss and their Supporting Memorandum on April 25, 2023. *See* ECF Nos. 16, 17. Plaintiffs filed a Memorandum in Opposition to the Motion on May 10, 2023. *See* ECF No. 19. Defendants replied on May 15, 2023. *See* ECF No. 20.

Plaintiffs assert three substantive Counts against Defendants under 28 U.S.C. § 2201 *et seq.* and 42 U.S.C. §§ 1983 and 1988.[4] Under Count I, Plaintiffs allege Defendants have denied them of their "right to . . . relocation benefits" under the Uniform Relocation Act, 42 U.S.C. § 4601 *et seq.* ("URA"), and its implementing regulations by (1) failing to award Plaintiffs relocation benefits to which they are entitled and (2) foreclosing their ability to appeal by failing to issue a final determination on their relocation benefit claims.[5] Am. Compl. ¶¶ 75, 84, 91–92, 111–15. Although Plaintiffs make several allegations under Count I that appear related to constitutional due process and equal protection claims, the fact that Plaintiffs make those claims explicitly under Counts II and III leads the Court to construe Count I as a federal statutory claim. *See id.* ¶¶ 87, 94–98, 105–08, 111, 116.

Under Count II, Plaintiffs claim that Defendants deprived them of their procedural due process rights under the Fifth and Fourteenth Amendments. *Id.* ¶ 125. Plaintiffs allege two alternative theories of harm: First, Defendants made no final determination of Plaintiffs' claims to relocation benefits, in violation of federal and Virginia regulations, and thereby stripped Plaintiffs of their ability to appeal, *id.* ¶ 123 (citing 49 C.F.R. §§ 24:10, 24.207(b); 24 Va. Admin. Code § 30-41-90; Va. Code § 2.2-4029; *Bergano v. City of Va. Beach*, 241 F. Supp. 3d 690, 703–05 (E.D. Va. 2017)); second, if a final determination has been made, "neither VDOT nor Defendants or their subordinates provided [Plaintiffs] with notice of this determination or an explanation of the basis therefor," again denying Plaintiffs the opportunity to appeal "required by law," *id.* ¶ 124 (citing 49 C.F.R. §§ 24.10, 24.207(e); Va. Code § 2.2-4029; 24 Va. Admin. Code § 30-41-90).

---

[4] Plaintiffs include a fourth Count alleging that a justiciable controversy exists and that declaratory relief pursuant to 28 U.S.C. § 2201 *et seq.* is necessary and appropriate in this case. Am. Compl. ¶¶ 151–53. Because Count IV contains no factual allegations, but rather legal conclusions, the Court interprets Count IV as part of Plaintiffs' request for relief, not as a substantive claim.

[5] The Court considers "relocation assistance" to be part of "relocation benefits." *See, e.g.,* ¶¶ 102, 107, 114.

In Count III, Plaintiffs allege Defendants deprived them of their equal protection rights under the Fourteenth Amendment. Plaintiffs again allege alternative theories of harm: First, Defendants denied Plaintiffs relocation benefits while providing similarly situated persons with relocation benefits, *id.* ¶¶ 107, 134–35, 142; second, Defendants singled them out for disparate treatment when Defendants told them in May 2020 that a final determination had already been made on Plaintiffs' relocation benefit claims, *id.* ¶¶ 138, 144.

Plaintiffs request an order declaring that (1) "Defendants have failed to properly manage and supervise their employees and representatives and have failed to provide a determination as to the relocation claims submitted by Plaintiffs as a result of being forced to relocate due to VDOT's road project," *id.* ¶ 154; (2) "Defendants have deprived [Plaintiffs] of their rights as displaced persons under State and Federal law," *id.* at 26 ¶ A; and (3) "Defendants have denied Plaintiffs due process and equal protection of the law in violation of their Federally protected statutory and Constitutional rights," *id.* at 26 ¶ B. Plaintiffs also seek compensatory damages, attorneys' fees and costs, and any other relief as justice may require. *Id.* at 26 ¶¶ C–E.

## II.      LEGAL STANDARD

### A.      Rule 12(b)(1): Lack of Subject Matter Jurisdiction

The standard of review for a challenge to the Court's Article III jurisdiction may be raised under either Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction or Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See Perry-Bey v. City of Norfolk, Va.*, 678 F. Supp. 2d 348, 360 (E.D. Va. 2009), *aff'd*, 333 F. App'x 733 (4th Cir. 2009). When a defendant seeks dismissal under Rule 12(b)(1), the plaintiff bears the burden of proving subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 767, 768 (4th Cir. 1991). To determine whether subject-matter jurisdiction exists, a district

court "may consider evidence outside the pleadings without converting the proceedings to one for summary judgment." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005) (citation omitted). If a court determines that it lacks jurisdiction over a matter, it must dismiss the action.

**B.     Rule 12(b)(6): Failure to State a Claim upon Which Relief Can be Granted**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. For the purposes of a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (A court may "consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic."); *see also* Fed. R. Civ. P. 10(c). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

Federal Rule of Civil Procedure 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554– 55 (2007) (quotations omitted). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *See id.* at 555, 570. This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 667–79 (2009). Accordingly, the plausibility standard

12

requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557). To achieve factual plausibility, plaintiffs must allege more than "naked assertion[s] . . . without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation omitted).

## III.    DISCUSSION

Defendants move to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). They argue the Court has no subject matter jurisdiction over this case and that the Amended Complaint is procedurally and substantively deficient. *See* Defs.' Mem. Supp. at 1–2.

### A.    Rule 12(b)(1) Motion: Subject Matter Jurisdiction

Plaintiffs sue Defendants in both their individual and official capacities. Am. Compl. at 1. Defendants contest (1) they are not "persons" under 42 U.S.C. § 1983 per *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989), and therefore cannot be sued in their individual capacities, and (2) the Eleventh Amendment bars Plaintiffs' claims against them in their official capacities. Defs.' Mem. Supp. at 5–6. The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has not clearly decided "whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)." *Andrews v. Daw*, 201 F.3d 521, 525 n.2 (4th Cir. 2000). Yet the distinction makes "little practical difference," and the Court finds it appropriate to address these issues as a matter of the Court's subject matter jurisdiction. *Zemedagehu v. Arthur*, No. 1:15-cv-57, 2015 WL 1930539, at *3 (E.D. Va. Apr. 28, 2015).

### i.   Legal Standard: Eleventh Amendment and 42 U.S.C. § 1983

Under the Eleventh Amendment, "an unconsenting State is immune from suit brought in federal court by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). State agencies and instrumentalities also receive Eleventh Amendment protections and may not be sued for injunctive or monetary relief. *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014); *Regents of Univ. Cal. v. Doe*, 519 U.S. 425, 429 (1997). Additionally, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the state itself." *Will*, 491 U.S. at 71 (citations omitted). Accordingly, state officials are immune from damages suits in their official capacities. *See Brandon v. Holt*, 469 U.S. 464, 471 (1985); *Harter v. Vernon*, 101 F.3d 334, 337 (4th Cir. 1996). "[S]overeign immunity is akin to an affirmative defense, which the defendant bears the burden of demonstrating." *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014).

Under the *Ex parte Young* exception, a plaintiff may avoid the Eleventh Amendment bar to suit against state officials if she seeks prospective injunctive or declaratory relief from state officials' unlawful acts. *Ex parte Young*, 209 U.S. 123 (1908); *see Frew v. Hawkins*, 540 U.S. 431, 437 (2004). To determine whether the *Ex parte Young* exception applies, "a court need only conduct a 'straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (cleaned up). The exception does not apply when the alleged violations "occurred entirely in the past." *DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999).

Section 1983 imposes liability on "[e]very person" who acts under color of law to deprive an individual of her federal constitutional or statutory rights. *See* 42 U.S.C. § 1983.[6] Because actions against state officials acting in their official capacities are typically considered actions against the state, those officials typically do not qualify as "persons" subject to suit under § 1983. *See Will*, 491 U.S. at 71. But "official-capacity actions for prospective relief are not treated as actions against the State," *Kentucky v. Graham*, 473 U.S. 159, 167, n.14 (1985), meaning a state official is a "person" under § 1983 wherever the *Ex parte Young* exception applies. *See Will*, 491 U.S. at 71 n.10 (citing *Graham*, 473 U.S. at 167, n.14; *Ex parte Young*, 209 U.S. 159–160). Where applicable, the Court will address Defendants' § 1983 "person" defense first, and then their Eleventh Amendment defense. *See Vt. Agency of Nat. Res. v. United States*, 529 U.S. 765, 779–80 (2000); *Power v. Summer*, 226 F.3d 815, 818 (7th Cir. 2000); 1 Martin A. Schwartz, Section 1983 Litigation: Claims and Defenses § 8.01 (4th ed. 2023) ("[W]hen faced with *Will* person and Eleventh Amendment defenses, the court must first resolve the *Will* person issue.").

## ii.   Claims against Defendants in their Individual Capacities

It is well established that "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983." *Hafer v. Melo*, 502 U.S. 21, 31 (1991). Thus, whether Plaintiffs may sue Defendants for damages is not a § 1983 "person" question, but rather an Eleventh

---

[6] Section 1983 provides in full:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

Amendment question of whether the action is truly brought against Defendants as individuals. "[T]he mere incantation of the term 'individual capacity' is not enough to transform an official capacity action into an individual capacity action." *Lizzi v. Alexander*, 255 F.3d 128, 137 (4th Cir. 2001), *overruled in part on other grounds by Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721 (2003). Because the Eleventh Amendment "bars suits in federal court 'by private parties seeking to impose a liability which must be paid from public funds in the state treasury,'" *Hafer*, 502 U.S. at 30 (quoting *Edelman*, 415 U.S. at 663), the Court must look to the Amended Complaint's substance to determine whether Plaintiffs genuinely seek relief from Defendants as individuals or instead seek relief from the state. *See Adams v. Ferguson*, 884 F.3d 219, 225 (2018). The Court may examine whether anything in the Amended Complaint or in the record undermines Plaintiffs' assertion. *See Adams*, 884 F.3d at 225; *Garrett v. Clarke*, 552 F. Supp. 3d 539, 554–55 (E.D. Va. 2021), *rev'd on other grounds*, 74 F.4th 579 (4th Cir. 2023).

   Defendants argue that nothing in the Amended Complaint demonstrates a true intent to sue them for compensatory damages in their individual capacities. Defs.' Mem. Supp. at 7–8. Defendants insist that although Plaintiffs repeatedly name "VDOT and the Defendants" as violators, Plaintiffs still intend to sue VDOT only and fail to specify which facts support individual liability rather than official liability. Defs.' Reply at 4–5 (quoting Am. Compl. ¶¶ 105, 112). Defendants also argue that the Eleventh Amendment bars Plaintiffs' claim for damages because they effectively seek relocation benefits that would have been paid from the state treasury. Defs.' Mem. Supp at 8. Plaintiffs maintain that they seek compensatory damages from Defendants as individuals and disclaim any request that the Court award them relocation benefits. Pls.' Opp'n at 3–4.

Plaintiffs' Amended Complaint contains sufficient allegations to construe the action as one against Defendants in their individual capacities, but only as it relates to Counts II and III. In these Counts, Plaintiffs allege Defendants violated their constitutional rights by failing to properly manage or supervise their subordinates. "[P]ublic administrators . . . may be liable in their individual capacities only for their personal wrongdoing or supervisory actions that violated constitutional norms." *Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Plaintiffs allege facts addressing the elements of supervisory liability, including Defendants' knowledge of the alleged violations and their inadequate response to those violations. Am. Compl. ¶¶ 127–133, 150. Plaintiffs also identify Defendants' subordinates when describing certain events and alleged constitutional violations. *See id.* ¶¶ 25, 49, 52, 56, 124. Defendants argue that Plaintiffs seek damages against all named Defendants and make minimal efforts to specify which allegations support individual- versus official-capacity claims. Defs.' Mem. Supp. at 7 (citing *Dillow v. Va. Polytechnic Inst. & State Univ.*, 7:22cv00280, 2023 WL 2320765, at *18, *21 (W.D. Va. Mar. 2, 2023)). Yet this is only a two-defendant matter, not one involving several named individuals and institutions, meaning there is no confusion about who Plaintiffs intend to sue in their individual capacities. *See Dillow*, 2023 WL 2320765, at *1, *3, *8–9 (finding no individual action where plaintiff named eight state officials and one state institution as defendants). Thus, the Court finds the allegations sufficiently specific to determine that Plaintiffs properly sue Defendants in their individual capacities under Counts II and III.

Plaintiffs do not sufficiently establish a suit against Defendants in their individual capacities under Count I, however. Plaintiffs do not allege a theory of supervisory or individual misconduct regarding Plaintiffs' rights under the URA. Instead, Count I of the Amended

Complaint largely mirrors Count I of the original Complaint, in which Plaintiffs sued VDOT and the Commissioner of Highways generally. *See generally* Compl. Although Plaintiffs updated the Amended Complaint to allege supervisory or individual wrongdoing under Counts II and III, Plaintiffs made only nominal changes in Count I to allege that "VDOT, through the actions of Defendants"—rather than simply "VDOT"—deprived them of relocation benefits. *Compare* Am. Compl. ¶¶ 92, 94–99, *with* Compl. ¶¶ 86, 88–93. These minor, superficial changes are insufficient to turn an action against the State into one against Defendants in their individual capacities.

Further, "immunity applies where the 'governmental entity is so connected to the State that the legal action against the entity would . . . amount to the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'" *Thresher v. Northam*, No. 3:20-cv-307, 2020 WL 12862835, at *5 (E.D. Va. Nov. 23, 2020) (quoting *Hutto*, 773 F.3d at 543). Defendants' duties include overseeing VDOT's award of benefits and issuance of final determinations on benefit claims pursuant to the URA and its implementing regulations. Am. Compl. ¶¶ 12–13, 75–80. Holding Defendants liable for violating Plaintiffs' alleged rights under the URA would essentially hold them liable for failing to carry out their official duties and would "amount to subjecting the Commonwealth to the judicial process." *Thresher*, 2020 WL 12862835, at *5. Therefore, Defendants are merely the "alter ego of the state" under Count I, and "the state is the real party in interest." *Hutto*, 773 F.3d at 542 (citation omitted).

In sum, Plaintiffs state justiciable claims against Defendants in their individual capacities under Counts II and III of the Amended Complaint. Plaintiffs do not state a justiciable claim against Defendants in their individual capacities under Count I. Count I is therefore DISMISSED as it applies to Defendants in their individual capacities.

### iii.    Claims against Defendants in their Official Capacities

As stated above, States are not "persons" under § 1983, and actions against state officials are usually considered actions against the State. *Will*, 491 U.S. at 71. But under the *Ex parte Young* exception, state officials are "persons" when sued in their official capacities for prospective relief from ongoing violations of federal law. *See id.* at 71 n.10; *Ex parte Young*, 209 U.S. at 159–60. Although compensatory damages only offer retrospective relief, Plaintiffs also request declaratory relief, which may be prospective. *See Green v. Mansour*, 474 U.S. 64, 67–68 (1985). Therefore, whether Defendants are "persons" under § 1983 when sued in their official capacity depends on whether Plaintiffs allege ongoing violations of federal law and request declaratory relief that is prospective. *See Verizon Md.*, 535 U.S. at 645; *Ex parte Young*, 209 U.S. at 159–60.

Defendants argue that Plaintiffs do not request prospective relief, but rather a retrospective "declaration pertaining to the Defendants' denial of Plaintiffs' reimbursement requests in the past." Defs.' Mem. Supp. at 6. Defendants assert that Plaintiffs only seek "declaratory relief to force the Defendants to pay an accrued monetary liability," not "to ensure that relocation expenses incurred in the future are properly reimbursed." Defs.' Reply at 3. Plaintiffs rebut that they sufficiently allege ongoing constitutional violations. Pls.' Opp'n at 3–4 (citing Am. Compl. Counts II–VI, ad damnum clause). They argue the Court can provide prospective relief by declaring "that the Defendants have deprived and continue to deprive the Plaintiffs of Constitutionally protected rights." *Id.* at 3.

"In discerning on which side of the line a particular case falls, [the Court] look[s] to the substance rather than to the form of the relief sought and will be guided by the policies underlying the decision in *Ex parte Young*." *Papasan v. Allain*, 478 U.S. 265, 279 (1986) (citing *Edelman*, 415 U.S. at 668). The Court will analyze whether Plaintiffs allege ongoing violations of federal

19

law under each Count and request prospective relief for those claims. *Verizon Md.*, 535 U.S. at 645.

    a.  Count I: Rights under Federal Law

Under Count I, Plaintiffs allege Defendants have denied them of their "right to . . . relocation benefits" under the Uniform Relocation Act ("URA") and its implementing regulations by denying Plaintiffs' benefit claims. *See* Am. Compl. ¶¶ 91–92, 111–15. Plaintiffs request an order "declaring that the Defendants have deprived [Plaintiffs] of their rights as displaced persons under State and Federal law."[7] *Id.* at 26 ¶ A.

Plaintiffs do not allege an ongoing violation of their alleged rights under the URA, but rather past violations. Plaintiffs allege no "presently experienced harmful consequences of past conduct" stemming from the fact they did not receive certain relocation benefits. *Republic of Paraguay v. Allen*, 134 F.3d 622, 628 (4th Cir. 1998). Further, Plaintiffs do not allege they intend to submit more benefit requests in the future or otherwise need the Court to protect them from a "real and immediate threat of future injury." *Savage v. Maryland*, 896 F.3d 260, 274–75 (4th Cir. 2018).

Additionally, declaratory judgment would not offer Plaintiffs prospective relief under Count I. Declaratory judgment is not available where it would only be useful if "offered in state-court proceedings as res judicata on the issue of liability," because it "would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment." *Green*, 474 U.S. at 73; *see also Manning v. S.C. Dep't of Highway & Pub. Transp.*, 914 F.2d 44, 48 (4th Cir. 1990) (rejecting

---

[7] To the extent Plaintiffs claim violations of their state statutory rights, that claim is dismissed because "§ 1983 does not provide redress for violations of state law." *Clear Sky Car Wash, LLC v. City of Chesapeake, Va.*, 910 F. Supp. 2d 861, 889 (E.D. Va. 2012).

claim for declaratory relief where "[t]he only benefit [plaintiff] could derive from a favorable ruling would be a judgment which he could argue as res judicata in his stayed state court proceedings against the [State] Highway Department").[8] Here, declaratory judgment would only be useful to Plaintiffs for its preclusive effect in further proceedings against Defendants or VDOT to collect the same relocation benefits Plaintiffs have already claimed. In other words, a declaratory order holding that Defendants' failure to award relocation benefits was unlawful would essentially render Defendants liable to Plaintiffs for those benefits. The Supreme Court has rejected attempts to characterize claims of retrospective liability in equitable terms where the result would be the same as awarding monetary relief from the state. *See Edelman*, 415 U.S. at 664–67; *Papasan*, 478 U.S. at 281–81. *Wright-Gray v. Ill. Dep't of Healthcare & Family Servs.*, No. 09 C 4414, 2010 WL 381115, at *4 (N.D. Ill. Jan. 26, 2010) ("As [*Edelman*] explained, the award of past benefits wrongfully withheld would 'to a virtual certainty be paid from state funds . . . .'" (quoting *Edelman*, 415 U.S. at 668)). Therefore, declaring that Defendants unlawfully denied relocation benefits would be retrospective in nature and would have more than an "ancillary effect" on the state treasury. *Edelman*, 415 U.S. at 668.

Without alleging an ongoing violation of federal law and requesting prospective relief, Plaintiffs may not sue Defendants in their official capacities under Count I. *Verizon Md.*, 535 U.S. at 645. Therefore, the Eleventh Amendment deprives the Court of jurisdiction to hear Plaintiffs' official-capacity claims in Count I, and those claims are DISMISSED.

---

[8] As noted in *Green*, "[i]f, of course, [Plaintiffs] would make no claim that the federal declaratory judgment was res judicata in later commenced state proceedings, the declaratory judgment would serve no purpose whatever in resolving the remaining dispute between the parties, and is unavailable for that reason." *Green*, 474 U.S. at 74 n.2 (citing *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 247 (1952)).

b. Count II: Due Process

In Count II, Plaintiffs allege Defendants deprived them of their constitutional due process rights under the Fifth and Fourteenth Amendments. First, Plaintiffs allege that because Defendants failed to issue a final determination on Plaintiffs' benefit claims, Plaintiffs cannot appeal those claims and have no opportunity to be heard. Am. Compl. ¶ 123. Alternatively, Plaintiffs allege that if Defendants rendered a final determination, they failed to provide notice and an explanation of the final determination on Plaintiffs' benefit claims, which also forecloses their ability to appeal. *Id.* ¶ 124. Additionally, Plaintiffs allege Defendants are liable for due process violations arising from their failure to properly manage and supervise their subordinates within VDOT. *Id.* ¶¶ 126–31, 154.

Plaintiffs request two relevant declaratory orders: First, an order "declaring that Defendants have denied Plaintiffs due process . . . in violation of their [f]ederally protected . . . [c]onstitutional rights," *id.* at 26 ¶ B; and second, an order "declaring that Defendants have failed to properly manage and supervise their employees and representatives and have failed to provide a determination as to the relocation claims submitted by Plaintiffs," *id.* ¶ 154. Because the second order, if issued, would describe one way in which Defendants violated Plaintiffs' constitutional rights, the Court will construe these as a single request for declaratory relief on Plaintiffs' constitutional claims, with the description only applying if Plaintiffs prove their third theory of harm.

Plaintiffs sufficiently allege ongoing constitutional due process violations. Plaintiffs explicitly allege "ongoing harm to Plaintiffs' due process rights" under Count II because they "are unable to . . . appeal the determination reached." *Id.* ¶ 132. Plaintiffs also allege Defendants know that they and VDOT "have not rendered—and refuse to render—a determination as to the

22

relocation benefits claimed by [Plaintiffs]." *Id.* at ¶¶ 127, 129. The Court need not "consider the merits of [these] claims; it is enough that the complaint *alleges* an ongoing violation of federal law." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 497 (4th Cir. 2005) (citing *Verizon Md.*, 535 U.S. at 646).

Plaintiffs' request for declaratory relief is also "properly characterized as prospective" under Count II because it would not affect the substance of any final determination on Plaintiffs' benefit claims. *Verizon Md.*, 535 U.S. at 645. If the Court declares that Defendants deprived Plaintiffs of due process by failing to issue a final determination sufficient to allow them to appeal, the order would not oblige Defendants or the state to award Plaintiffs any benefits. Rather, it would only require that Defendants make a final determination with sufficient notice and explanation, and Defendants could choose to grant or deny Plaintiffs' benefit claims. Thus, declaratory judgment here would have at most an "ancillary effect" on the state treasury, *Edelman*, 415 U.S. at 668, and would "directly end[] the violation of federal law." *Papasan*, 478 U.S. at 278.

For these reasons, the Court has jurisdiction to consider Plaintiffs' claims under Count II against Defendants in their official capacities.

    c.   <u>Count III: Equal Protection</u>

In Count III, Plaintiffs allege Defendants deprived them of their equal protection rights under the Fourteenth Amendment. First, Plaintiffs allege Defendants denied Plaintiffs relocation benefits while providing similarly situated persons with relocation benefits. Am. Compl. ¶¶ 107, 134–35, 142. Second, Plaintiffs allege that Defendants singled them out for disparate treatment when Defendants told them in May 2020 that the June 15, 2018 letter constituted a final determination on their relocation benefit claims. Am. Compl. ¶¶ 138, 144.

Plaintiffs do not allege an ongoing violation of their equal protection rights, but rather that their equal protection rights were "violated at one time or over a period of time in the past." *Papasan*, 478 U.S. at 277–78; *see generally* Am. Compl. ¶¶ 133–49. Although Plaintiffs' second theory under Count III is similar to Count II regarding their ability to appeal, Plaintiffs allege no "real and immediate threat of future injury" arising from Defendants' disparate treatment or discriminatory animus. *Savage*, 896 F.3d at 274–75. Plaintiffs' key allegation regarding discriminatory animus—that Deputy Attorney General Haley said VDOT would have paid Plaintiffs more relocation benefits if they had not hired attorneys and sued VDOT—addresses past disparate treatment regarding Plaintiffs' prior benefit claims. Am. Compl. ¶ 66. Further, the allegation does not address Defendants' characterization of the June 15, 2018, letter as a final determination. Rather than allege a "present disparity in the distribution of . . . benefits," Plaintiffs allege "past actions of the state." *Papasan*, 478 U.S. at 282.

Because the harm alleged is in the past, a declaratory order would only serve to deter disparate treatment in later proceeding to collect on Plaintiffs' previously submitted benefit claims. While that may be desirable, the Court may not issue a declaration "intended indirectly to encourage compliance with federal law through deterrence." *Id.* at 278; *see also Green*, 474 U.S. at 68 ("[C]ompensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment."). Rather, it may only issue "relief against [a] state official [that] directly ends the violation of federal law." *Papasan*, 478 U.S. at 278.

For these reasons, the Court lacks jurisdiction to hear Plaintiffs' claims in Count III against Defendants in their official capacities, and those claims are DISMISSED.

### iv.    Disposition on Rule 12(b)(1) Motion to Dismiss

For the foregoing reasons, Defendants' 12(b)(1) Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The 12(b)(1) Motion is GRANTED with respect to Count I in full and with respect to Count III to the extent Plaintiffs assert claims against Defendants in their official capacities. The 12(b)(1) Motion is DENIED with respect to Count II in full and with respect to Count III to the extent Plaintiffs assert claims against Defendants in their individual capacities.

### B.    Rule 12(b)(6) Motion: Failure to State a Claim upon which Relief Can be Granted

Proceeding to Defendants' 12(b)(6) Motion to Dismiss, Defendants raise several defenses: Defendants are qualifiedly immune from Plaintiffs' claims; Plaintiffs' claims are untimely under the applicable statute of limitations; Plaintiffs' claims are barred by res judicata; Plaintiffs fail to allege facts showing that Defendants' actions were wrongful; and Plaintiffs fail to allege sufficient facts to show a due process violation or equal protection violation under Counts II and III. Defs.' Mem. Supp. at 10–28. The Court will address these arguments where necessary and relevant to Plaintiffs' justiciable claims asserted in Counts II and III.

### i.    Qualified Immunity

Qualified immunity is an affirmative defense, and "the burden of pleading it rests with the defendant." *Crawford-El v. Britton*, 523 U.S. 574, 587 (1998) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Because qualified immunity is "an *immunity from suit* rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Indeed, the "driving force" behind the creation of the qualified immunity doctrine was to ensure that "'insubstantial claims' against government officials be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987). Accordingly,

25

the Supreme Court has repeatedly stressed "the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 US. 224, 227 (1991) (per curiam). It is therefore appropriate to consider and, if possible, to resolve qualified immunity questions at this stage.

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Generally, if the law is clearly established, "a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818–19. "Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate." *Id.* at 819. However, "the public interest may be better served" by independent action taken without fear of consequences "where an official's duties legitimately require action in which clearly established rights are not implicated." *Id.* Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation omitted). Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix*, 577 U.S. at 12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The first step of the qualified-immunity analysis asks "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson*, 555 U.S. at 232. Second,

"the court must decide whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Id.* (internal quotation marks omitted). "If the answer to either question is no, then the official is entitled to qualified immunity." *Halcomb v. Ravenell*, 992 F.3d 316, 319 (4th Cir. 2021). Courts have discretion to address either of the two steps first, based on "the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Defendants argue they enjoy qualified immunity from Plaintiffs' individual-capacity claims because Plaintiffs do not allege constitutional rights that were "clearly established at the time of the alleged violation." Defs.' Mem. Supp. at 17. Plaintiffs counter that the court in *Bergano v. City of Va. Beach*, 241 F. Supp. 3d 690, 706–07 (E.D. Va. 2017), clearly establishes that Plaintiffs' right to equal protection under the law is violated when a state actor treats a plaintiff differently and with discriminatory animus because the plaintiff obtained legal counsel. Pls.' Opp'n at 13. Plaintiffs also assert that Ms. Snider knew Plaintiffs were entitled to relocation benefits as displaced persons. *Id.* at 13–14. Defendants respond that although Plaintiffs enjoy due process and equal protection rights in general, they do not allege specific rights that are "clearly established" in the context of this case. Defs.' Mem. Supp. at 16–17. Defendants also argue no controlling precedent puts the constitutional rights at issue here "beyond debate." Defs.' Reply at 11 (quoting *Adams*, 884 F.3d at 227).

   a.   Count II: Due Process

Under Count II, Plaintiffs fail to allege that defendants violated a constitutional right that is "clearly established" by controlling precedent.[9] First, as explained in detail below when analyzing Count II for failure to state a claim, Plaintiffs do not plead sufficient facts to show that

---

[9] Even though Plaintiffs claim Defendants "do not and cannot argue the right to due process is not clearly established," Pls.' Opp'n at 13, Defendants challenge all of Plaintiffs' constitutional claims on qualified immunity grounds and therefore satisfy their burden to raise the qualified immunity defense to Count II. *See* Defs.' Mem. Supp. at 16–17; *Crawford-El*, 523 U.S. at 587.

Defendants violated a constitutional right. In particular, the Supreme Court of Virginia's opinion in *Michael Fernandez, D.D.S., Ltd. v. Comm'r Highways*, 298 Va. 616, 842 S.E. 2d (2020), identifies other state processes available to Plaintiffs to enforce their rights to relocation benefits, including action under the Administrative Process Act or filing a petition for a writ of mandamus in Virginia state court. *Fernandez*, 298 Va. at 204. In the Fourth Circuit, "to determine whether a procedural due process violation has occurred, courts must consult the entire panoply of predeprivation and postdeprivation process provided by the state." *Tri Cnty. Paving, Inc. v. Ashe Cnty.*, 281 F.3d 430, 436 (4th Cir. 2002) (quoting *Fields v. Durham*, 909 F.2d 94, 97 (4th Cir. 1990)). The weight of authority indicates that Plaintiffs experienced no due process violation where they failed to pursue state remedies available to them. *See, e.g.*, *Tri Cnty. Paving*, 281 F.3d at 438. Therefore, Plaintiffs do not satisfy the first step of the qualified immunity analysis under Count II. *See Pearson*, 555 U.S. at 232.

Second, even if Plaintiffs did adequately plead a constitutional violation, Defendants are persuasive in arguing that Plaintiffs fail to assert a particularized right, and that no controlling precedent clearly establishes a right to a final determination or ability to appeal. Plaintiffs argue that because Ms. Snider was copied on a VDOT letter informing Plaintiffs that they were entitled to relocation benefits as displaced persons, Ms. Snider "knew or should have known Plaintiffs were entitled to receive relocation benefits and the rights related thereto." Pls.' Opp'n at 13–14 (citing Am. Compl. ¶ 17; Ex. A). This argument does not address the substance of Count II, however, which focuses on Defendants' failure to render a final determination or to provide notice and an explanation therefor, not their failure to award benefits. *See* Am. Compl. ¶¶ 123–24. Plaintiffs also cite no precedent to suggest that "every reasonable official would have understood" they would commit a due process violation by failing to award benefits, failing to issue a final

determination, or deciding that a final determination was already issued, especially after requesting further information on Plaintiffs' benefit claims. *Mullenix*, 577 U.S. at 11. Indeed, *Fernandez* indicates Defendants would have no reason to expect these acts would violate due process because Plaintiffs could have pursued several state avenues for relief. *See Fernandez*, 298 Va. at 204.

For these reasons, Defendants are protected by qualified immunity from Plaintiffs' individual-capacity claims in Count II, and those claims are DISMISSED.

### b. Count III

In Count III, Plaintiffs fail to identify a clearly established right that Defendants violated. Plaintiffs assert that equal protection rights are well established and that disparate treatment for obtaining counsel is inappropriate, Pls.' Opp'n at 13, but this argument does not satisfy the particularized standard necessary to demonstrate a "clearly established" constitutional right. *See Anderson*, 483 U.S. at 639–40. "The Supreme Court has 'repeatedly told courts not to define clearly established law at a high level of generality.'" *Adams*, 884 F.3d at 227 (quoting *al-Kidd*, 563 U.S. at 742). Instead, courts must "consider whether a right is clearly established 'in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Mullenix*, 577 U.S. at 12). The right to equal protection under the law is too general to overcome the qualified immunity defense.

At most, Plaintiffs assert that *Bergano* clearly establishes the right to be free from discrimination on the basis of representation by counsel. But no matter how similar *Bergano* may be to the present case, a single district court's holding—even one from the same federal district as this Court—is not binding and "falls far short of what is necessary absent controlling authority: a robust 'consensus of cases of persuasive authority.'" *al-Kidd*, 563 U.S. at 741–42 (quoting *Wilson*

*v. Layne*, 526 U.S. 603, 617 (1999)). Therefore, Plaintiffs do not show that Defendants violated a clearly established constitutional right.

For these reasons, Defendants are qualifiedly immune from Plaintiffs' individual-capacity claims in Count III, and those claims are DISMISSED.

### c. Disposition on Qualified Immunity

For the foregoing reasons, Defendants are qualifiedly immune from Plaintiffs' individual-capacity claims under Counts II and III. Those Counts are therefore DISMISSED to the extent they state claims against Defendants as individuals.

### ii.    Failure to State a Claim under Count II

The only remaining claims are Plaintiffs' due process claims under Count II against Defendants in their official capacities. These must be dismissed because Plaintiffs fail to state a claim on which relief can be granted.[10]

To plausibly allege deprivation of procedural due process, Plaintiffs must allege facts sufficient to show "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." *Accident, Inj. and Rehab., PC v. Azar*, 943 F.3d 195, 203 (4th Cir. 2019) (quoting *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009)); *see Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013).

Defendants contend that Plaintiffs fail the first and third elements above. First, Defendants argue that relocation benefits and a final determination on benefit claims are not cognizable property interests because the URA does not create an entitlement to those purported interests. Defs.' Mem. Supp. at 19–20 (citing *Clear Sky Car Wash v. City of Chesapeake, Va.*, 910 F.

---

[10] The Court declines to address Defendants' statute of limitations and res judicata defenses, which are intertwined with issues of Virginia law, in favor of resolving the Motion on federal law grounds.

Supp.2d 861, 866 (E.D. Va. 2012); *Bergano v. City of Va. Beach*, No. 2:15-cv-520, 2016 WL 4435330, at *22 (E.D. Va. Aug. 17, 2016)). Second, Defendants argue that Plaintiffs' frequent exchange of correspondence with Defendants constituted sufficient process, in part because VDOT advised Plaintiffs of their right to appeal in the June 15, 2018, letter. *Id.* at 22–23.

Plaintiffs counter that the district court opinions in *Bergano* and *Clear Sky Car Wash* confirm that the URA affords them "a property interest in relocation benefits and procedures." Pls.' Opp'n at 17 (citing *Bergano*, 241 F. Supp. 3d at 703; *Clear Sky Car Wash*, 901 F. Supp. 2d at 875). Plaintiffs also challenge that their correspondence with Defendants is not sufficient process because Defendants never provided a final determination that would have allowed Plaintiffs to appeal. *Id.* at 18–19. Plaintiffs posit that if they had "sought to appeal any purported decision (or lack thereof) by VDOT in state court via an Administrative Process Act claim, the Defendants (or VDOT) would have claimed that no such decision had been made and that the appeal was improper." *Id.* at 19.

For the reasons explained below, Plaintiffs fail to allege a cognizable property interest and fail to allege they were afforded constitutionally inadequate process.

        a. <u>Cognizable Property Interest</u>

"Property interests are not defined by the Constitution. Rather, they 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Rockville Cars, LLC v. City of Rockville, Md.*, 891 F.3d 141, 146 (4th Cir. 2018) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Roth*, 408 U.S. at 577).

31

1.  No cognizable property interest under federal law

First, Plaintiffs fail to allege a cognizable property interest arising under federal law. Plaintiffs assert they have a "right to and property interest in relocation benefits" under the URA, but they do not identify a particular statutory provision conferring that right or interest. Am. Compl. ¶ 91; *see also id.* ¶ 87. Instead, Plaintiffs broadly allege that the URA and the VRAA— the state analogue to the URA—and their implementing regulations require VDOT to provide relocation assistance benefits, thereby entitling Plaintiffs to those benefits. *See id.* ¶¶ 76–79, 84– 85 (citing 42 U.S.C. § 4601 *et seq.*; Va. Code § 25.1-400 *et seq.*; 49 C.F.R. § 24.207(b)). Not only do these allegations fail to address the substance of Count II—Defendants' failure to issue a final determination with sufficient notice and explanation—but they identify no statutory language conferring a right to relocation benefits, demonstrating that Plaintiffs have no more than an "abstract need or desire" for such benefits. *Castle Rock*, 545 U.S. at 756.

Plaintiffs' argue *Clear Sky Car Wash* noted that "Section 4622 [of the URA] entitles businesses to recover" certain relocation benefits and observed a "right to prompt payment of [relocation] expenses" that exists after submitting a proper payment application. 910 F. Supp. 2d at 875; Pls.' Opp'n at 17. Yet Plaintiffs do not allege that 42 U.S.C. § 4622 is the source of their asserted "rights" or "entitlements," and they take these statements from *Clear Sky Car Wash* out of context. In *Clear Sky Car Wash*, the plaintiffs alleged that the defendants unconstitutionally violated "certain pre-deprivation rights" under the URA by "failing to comply with the URA's policies." 910 F. Supp. 2d at 885. The district court first analyzed the plaintiffs' claim that they had a federal right of action to enforce those pre-deprivation rights under Subchapters II and III of the URA. *See id.* at 872 (discussing 42 U.S.C. §§ 4622, 4625 (Subchapter II); 42 U.S.C. §§ 4651, 4655 (Subchapter III)). The court found that even though "Section 4622 entitles businesses to

32

recover" relocation expenses and a "right to prompt payment of such expenses exists only after a proper application for authorized payments has been made," the statutory language "does not address whether the URA gives Plaintiffs a federal right of action to pursue the statutorily authorized benefits." *Id.* at 875. Applying the Supreme Court's methodology in *Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002), the court held that Congress "did not evidence an intent to create a federal right of action" under either Subchapter. *Id.* at 877.

In their procedural due process claim, the *Clear Sky Car Wash* plaintiffs also cited the URA as the source of their asserted property interest. *Id.* at 886. The court held that because "the URA does not give rise to an independently enforceable right," the plaintiffs had "no entitlement to pre-deprivation benefits under the URA giving rise to a constitutionally protected property interest." *Id.*

The district court's holding in *Clear Sky Car Wash* is highly persuasive here. The weight of authority indicates the URA provides no individually enforceable right to relocation benefits. *See Clear Sky Car Wash v. City of Chesapeake, Va.*, 743 F.3d 438, 440, 444 (4th Cir. 2014) (affirming district court's holding that no individually enforceable rights exist under Subchapter III of the URA governing "mandatory real property acquisition policies . . . made appliable to state agencies" under 42 U.S.C. §§ 4651 and 4655); *Osher v. City of St. Louis, Mo.*, 903 F.3d 698, 703 (8th Cir. 2018) (holding no private right of action exists under 42 U.S.C. § 4622); *Delancey v. City of Austin*, 570 F.3d 590, 592 (5th Cir. 2009) (holding no private right of action exists under 42 U.S.C. § 4625); *Clear Sky Car Wash*, 910 F. Supp. 2d at 877–79. Without an individually enforceable right of action under the URA, Plaintiffs have only an abstract need or desire for relocation benefits or a final determination. *See Clear Sky Car Wash*, 910 F. Supp. 2d at 886. Plaintiffs' allegation that they are "among the class of persons Congress chose to protect under the

relocation statutes and regulations" because they are "displaced persons" under the URA, Am. Compl. ¶¶ 88–89, 93, does not satisfy the requirement that Congress "speak with a clear voice" to create an individually enforceable right of action in a statute. *See Clear Sky Car Wash*, 743 F.3d at 443–44 (quoting *Gonzaga*, 536 U.S. at 280).

Plaintiffs' passing allegation that they have an "expectation and interest" in receiving relocation benefits "expeditiously" under 49 C.F.R. § 24.207(b) is also insufficient to state a cognizable property interest. That regulation states, in part: "The Agency shall review claims in an expeditious manner . . . Payment for a claim shall be made as soon as feasible following receipt of sufficient documentation to support the claim." Am. Compl. ¶ 85. This language does not create any rights or liabilities, but rather directs VDOT to act in a particular manner. *Cf. Clear Sky Car Wash*, 743 F.3d at 443 (finding the "statutory directive [under Subchapter II of the URA] is aimed at the *agency head*, and it omits any language conferring rights or benefits on landowners"). Further, a regulation cannot create an individually enforceable right to relocation benefits where the URA does not. *See Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("Language in a regulation may invoke a private right of action that Congress through statutory text has created, but it may not create a right that Congress has not." (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577, n.18 (1979))); *Peters v. Jenney*, 327 F.3d 307, 316 n.9 (4th Cir. 2003) ("An administrative regulation . . . cannot create an enforceable § 1983 interest not already implicit in the enforcing statute." (quoting *Smith v. Kirk*, 821 F.2d 980, 984 (4th Cir. 1987))). Therefore, Plaintiffs merely have a unilateral expectation that their relocation benefit claims will be resolved "expeditiously."

For these reasons, "[j]ust as the *Clear Sky* plaintiffs failed to state a property interest required for a procedural due process claim, Plaintiff[s] ha[ve] failed to allege a property interest for URA benefits." *Bergano*, 2016 WL 4435330, at *8 (evaluating motion to dismiss).

### 2. No cognizable property interest under state law

Second, Plaintiffs do not show that Virginia law creates a cognizable property interest in relocation benefits. Although *Bergano* held that the plaintiffs there had a "constitutionally cognizable property interest[]" in "relocation benefits protected by [Virginia] law," 241 F. Supp. 3d at 702–03, the Supreme Court of Virginia's more recent holding in *Fernandez* significantly weakens *Bergano*'s persuasive authority here. The Supreme Court of Virginia held that the VRAA does not "create or imply the existence of a private right of action." *Fernandez*, 298 Va. at 619. As with the URA, the fact that Plaintiffs lack a right of action to relocation benefits under the VRAA means they have "[a]t most . . . a unilateral expectation of receiving certain benefits under the [VRAA] and such an expectation is not enough to create a property interest enforceable under the Due Process Clause." *Clear Sky Car Wash*, 910 F. Supp. 2d at 886.

### 3. No cognizable property interest in procedures

Finally, Plaintiffs cannot claim a constitutionally cognizable interest in certain procedures, whether they arise under federal or state law. *See Dist. Att'y's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 67 (2009) ("Process is not an end in itself . . . ."); *In re Premier Auto Servs., Inc.*, 492 F.3d 274, 282 (4th Cir. 2007) ("[P]rocess is not property. Indeed, procedural rights have not been held 'property rights in the constitutional sense.'" (quoting *Lim v. Cent. DuPage Hosp.*, 871 F.2d 644, 648 (7th Cir. 1989))). Therefore, Plaintiffs have no protectible interest in a final determination on their benefit claims or notice and explanation thereof.

35

    b.  <u>Constitutionally Inadequate Process</u>

Even if Plaintiffs have a constitutionally cognizable interest in relocation benefits or a final determination on those benefits, Plaintiffs fail to allege they experienced "constitutionally inadequate" process. *Accident, Inj. and Rehab.*, 943 F.3d at 203. "Due process of law generally requires that a deprivation of property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Tri Cnty. Paving*, 281 F.3d at 436 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). "[T]o determine whether a procedural due process violation has occurred, courts must consult the entire panoply of predeprivation and postdeprivation process provided by the state." *Id.* (quoting *Fields v. Durham*, 909 F.2d 94, 97 (4th Cir. 1990)).

Defendants afforded Plaintiffs significant pre-deprivation notice and opportunity to be heard regarding their relocation benefit claims. Plaintiffs allege and demonstrate through exhibits extensive correspondence with Defendants and their subordinates within VDOT, which included direct letter, e-mail, and oral communications with Ms. Snider. *See, e.g.*, Exs. D, P, V, Z–DD. Plaintiffs submitted several documents to support their relocation benefit claims, and Defendants considered the materials and awarded benefits on some claims while requesting further information on others. *See, e.g.*, Exs. I, L, M, R–T, V. After losing their state action in the Supreme Court of Virginia, Plaintiffs requested a final determination on their previously submitted benefit claims. *See* Am. Compl. ¶ 55; Ex. W at 2. After Commissioner Brich informed Plaintiffs in writing that the June 15, 2018 letter constituted a final determination, "Defendant Snider corresponded and spoke with Plaintiffs' counsel over a series of months regarding the [alleged] failure to issue a final determination and the provision of additional information so that a determination could be made." Am. Compl. ¶ 128; *see id.* ¶ 56; Ex. X at 2. Ms. Snider provided Plaintiffs another

36

opportunity to submit supporting documentation, and Plaintiffs availed themselves of that opportunity. *See* Exs. BB, CC, DD. This record of detailed and frequent communications between Defendants, their subordinates, and Plaintiffs does not demonstrate "constitutionally inadequate" pre-deprivation process. *Accident, Inj. and Rehab.*, 943 F.3d at 203; *see Tri Cnty. Paving*, 281 F.3d at 437 (finding no deprivation of due process where permit applicants were afforded the "opportunity to submit the documentation necessary to qualify for a building permit" and "often spoke directly with . . . the Director of Building Inspections[] regarding [their] permit application").

Even after Defendants maintained they already issued a final determination and later failed to respond to Plaintiffs' additional submissions, Plaintiffs never availed themselves of the "panoply of . . . postdeprivation process provided by the state." *Tri Cnty. Paving*, 281 F.3d at 436. As the Supreme Court of Virginia explained in *Fernandez*, Dr. Fernandez failed to exhaust his administrative remedies afforded to him under 24 Va. Admin. Code § 30-41-90 before filing suit in state court. *Fernandez*, 842 S.E.2d at 203. Although the court found no evidence that VDOT "ignored or refused to decide Fernandez's claim for relocation expenses," it held that even "if such evidence did exist, Fernandez would not be without recourse" because he "would be entitled to file suit under the Virginia Administrative Procedures Act, which authorizes courts to 'compel agency action unlawfully and arbitrarily withheld or unreasonably delayed.'" *Id.* at 204 (quoting Va. Code § 2.2-4029). The court also noted that "a writ of mandamus may be sought when a public official or body refuses to perform a duty required under the law." *Id.* (citation omitted).

Plaintiffs never pursued administrative review or the avenues for relief outlined in *Fernandez*. The fact that Plaintiffs "failed to . . . pursue the post-deprivation state remedies afforded to [them] . . . proves fatal to [their] claim when 'the existence of state remedies *is* relevant

for a § 1983 action based on procedural due process.'" *Rockville Cars*, 891 F.3d at 149 (quoting *Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008)). Plaintiffs' speculation that Defendants would have contested a Virginia Administrative Process Act action does not explain why that process is constitutionally deficient. *See* Pls.' Opp'n at 19; *see also Osborne*, 557 U.S. at 72 ("It is difficult to criticize the State's procedures when [the plaintiff] has not invoked them."). Because Plaintiffs failed to seek available state remedies, "the Court has no reason to believe that the state process for redeeming [Plaintiffs'] alleged property right . . . was constitutionally inadequate." *Rockville Cars*, 891 F.3d at 149; *see also Tri Cnty. Paving*, 281 F.3d at 438 (finding that after plaintiff chose not to pursue state court remedies, including petition for writ of mandamus, plaintiff could not "complain now that the state did not provide adequate procedures").

For the foregoing reasons, Plaintiffs fail to plead sufficient facts showing Defendants violated their procedural due process rights under the Fifth and Fourteenth Amendments. Plaintiffs' due process claims against Defendants in their official capacities under Count II are therefore DISMISSED.

### iii.    Disposition on Rule 12(b)(6) Motion to Dismiss

For the foregoing reasons, Defendants' 12(b)(6) Motion to Dismiss is GRANTED IN PART and DISMISSED IN PART as moot. The 12(b)(6) Motion to Dismiss is GRANTED with respect to Plaintiffs' claims against Defendants in their individual capacities under Counts II and III. The 12(b)(6) Motion is also GRANTED with respect to Plaintiffs' claims against Defendants in their official capacities under Count II. The 12(b)(6) Motion is otherwise DISMISSED as moot to the extent it relates to the claims resolved under Defendants' 12(b)(1) Motion.

## IV.      CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 16, is **GRANTED IN PART, DENIED IN PART, and DISMISSED IN PART** as moot. Defendants' 12(b)(1) Motion to Dismiss is GRANTED with respect to Count I in full and with respect to Count III to the extent Plaintiffs assert claims against Defendants in their official capacities. The 12(b)(1) Motion is DENIED with respect to Count II in full and with respect to Count III to the extent Plaintiffs assert claims against Defendants in their individual capacities. Defendants' 12(b)(6) Motion to Dismiss is GRANTED with respect to Count II in full and with respect to Count III to the extent Plaintiffs assert claims against Defendants in their individual capacities. The 12(b)(6) Motion is DISMISSED as moot with respect to all claims resolved under the 12(b)(1) Motion. Accordingly, Plaintiffs' Amended Complaint, ECF No. 12, is **DISMISSED** in full.

The Court **DIRECTS** the Clerk to provide a copy of this Memorandum Opinion and Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
December 18 , 2023

Raymond A. Jackson
United States District Judge