IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DR. MICHAEL FERNANDEZ, D.D.S., LTD.,
et al.,

        Plaintiffs,

        v.                             CIVIL ACTION NO. 2:23-cv-69

STEPHEN C. BRICH, P.E.,
et al.,

        Defendants.

## *MEMORANDUM OPINION AND ORDER*

Before the Court is the Plaintiffs' Motion for Leave to Amend their Amended Complaint ("Motion to Amend") and proposed Second Amended Complaint ("Proposed SAC"). ECF No. 26 ("Mot."); ECF No. 27 ("Pls.' Mem. Supp."); ECF No. 27-1 ("Proposed SAC"). Defendants oppose the Motion to Amend. ECF No. 28 ("Defs.' Mem. Opp'n"). Having reviewed the parties' filings, the Court finds that a hearing on this Motion is not necessary, and this matter is now ripe for judicial determination. *See* E.D. Va. Local Civ. R. 7(J). For the reasons stated herein, Plaintiffs' Motion to Amend is **DENIED**.

## I.      FACTUAL AND PROCEDURAL HISTORY

In February 2023, Dr. Michael Fernandez, D.D.S., Ltd., a Division of Atlantic Dental Care, and Dr. Miguel Fernandez, D.D.S. (collectively, "Plaintiffs") sued Stephen C. Brich, P.E., Commissioner of Highways for the Commonwealth of Virginia, and Lori A. Snider, State Right of Way and Utilities Director of the Virginia Department of Transportation (collectively, "Defendants") for alleged violations of their federal statutory and constitutional rights. ECF No. 1

("Compl."). Plaintiffs later filed an Amended Complaint as of right in April 2023. ECF No. 12 ("Am. Compl."); *see* Fed. R. Civ. P. 15(a)(1)(B). Defendants filed a motion to dismiss the Amended Complaint, which the Court granted on December 18, 2023. *See* Mem. Op. & Order, ECF No. 25 ("Order"); *Dr. Michael Fernandez, D.D.S., LTD v. Brich*, No. 2:23-cv-69, 2023 WL 8719440 (E.D. Va. Dec. 18, 2023).

Plaintiffs now seek leave to amend the Amended Complaint. Because the alleged facts in the Proposed SAC are substantially similar to those in the Amended Complaint, the Court offers an abbreviated summary of the allegations in the Proposed SAC.[1] *See also* Order at 1–9; Am. Compl. The Court will discuss newly alleged, relevant facts in the discussion section below when deciding whether to grant leave to amend.

In 2016, VDOT forced Dr. Fernandez to relocate his dentistry practice to make way for an interstate improvement project for which VDOT received federal financial assistance. *See* Proposed SAC ¶¶ 14–22, Ex. A.[2] After a lengthy and contentious process of finding a new, suitable location for the practice, Plaintiffs submitted a claim for over $567,000 in relocation benefits to VDOT in the fall of 2017. *Id.* ¶¶ 23–43, Exs. B–K. Plaintiffs and VDOT corresponded for several months as VDOT requested additional information and clarification on Plaintiffs' claims, which Plaintiffs provided to the extent possible. *Id.* ¶¶ 44–50, Exs. L–T.

In a letter dated June 15, 2018, VDOT informed Plaintiffs that it was "unable to proceed any further" in reviewing Plaintiffs' relocation benefit claims until it received certain information it had previously requested. *Id.* ¶¶ 51–52, Ex. U. VDOT also advised Plaintiffs of their right to

---

[1] The factual summary is stated in the light most favorable to Plaintiffs. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).
[2] Citations to exhibits refer to those attached to Plaintiffs' Proposed SAC, which together are labeled as Exhibit 1 to Plaintiffs' Brief in Support of the Motion for Leave to Amend. *See* ECF No. 27-1 at 31–374 (containing Proposed SAC Exhibits A through HH).

appeal "any determinations made by [VDOT]" within 90 days and attached a copy of VDOT's appeal process regulations. *Id.* ¶ 54, Ex U. The letter only approved a $255 reimbursement for Dr. Fernandez's time spent searching for a new location, but it did not make any determination on Plaintiffs' other benefit claims. *Id.* ¶¶ 51, 55–64, Exs. U–V. Later that month, Plaintiffs sued Commissioner Brich in state court seeking reimbursement of their moving costs. *Id.* ¶ 65. The court dismissed the suit, and the Supreme Court of Virginia affirmed in June 2020. *See id.*; *Michael Fernandez, D.D.S., Ltd. v. Comm'r of Highways*, 298 Va. 616, 842 S.E.2d 200 (2020).

In December 2020, Plaintiffs asked Commissioner Brich whether he intended to make a final determination on their relocation benefit claims. Proposed SAC ¶ 66, Ex. W. Commissioner Brich responded that the June 15, 2018, letter constituted a final determination and that Plaintiffs failed to appeal within the 90-day period. *Id.* ¶ 67, Ex. X. Plaintiffs disputed that conclusion, and in April 2021, they requested a final determination on their relocation benefit claims from Ms. Snider. *Id.* ¶¶ 68–69, Exs. Y–Z. After corresponding with Plaintiffs for several months, Ms. Snider eventually stopped responding to Plaintiffs' letters in the spring of 2022, and no final determination was ever made. *Id.* ¶¶ 70–77, Exs. AA–HH.

In the fall of 2022, Plaintiffs learned from the Virginia Attorney General's office—speaking on behalf of VDOT—that they would have received more relocation benefits if they had not hired attorneys and pursued their claims in court, that their claim was "not a priority for VDOT," and that no final determination would be forthcoming. *Id.* ¶¶ 78–82. Plaintiffs continue to pay interest on financing that was necessary to facilitate their relocation. *Id.* ¶ 84–88.

In Count I of the Proposed SAC, Plaintiffs allege that Defendants violated their equal protection rights under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution in two ways. First, Defendants denied or failed to award them relocation benefits

3

pursuant to the Uniform Relocation Act ("URA"), 42 U.S.C. § 4601 *et seq.*, and the Virginia Relocation Assistance Act ("VRAA"), Va. Code § 25.1-400 *et seq. See* Proposed SAC ¶¶ 96, 116, 133–34. Second, Defendants failed to make a final determination on their relocation benefit claims and thereby foreclosed Plaintiffs' ability to appeal the denial of benefits. *Id.* ¶¶ 96, 116, 149. In Count II, Plaintiffs seek judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, claiming that Defendants' failure to award benefits and render a final determination violates the URA, VRAA, and their implementing regulations. *Id.* ¶¶ 152–53, 159. Plaintiffs ask the Court to declare that Defendants denied them of equal protection of their federal statutory and constitutional rights, order Defendants to provide them with a final determination on their outstanding benefit claims, and award them appropriate compensatory damages and attorneys' fees and costs. *Id.* at 28–29.

## II. LEGAL STANDARD

### A. Rule 15(a): Amending Pleadings Before Trial

Federal Rule 15(a) governs amendments to pleadings prior to trial. The Rule authorizes a party to file an amended complaint once as a matter of course within 21 days after service of process or service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Courts "should freely give leave when justice so requires." *Id.* However, leave to amend may be denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). The

decision is committed to the sound discretion of the district court. *See Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008).

"A proposed amendment is futile when it is 'clearly insufficient or frivolous on its face' . . . [or] if the claim it presents would not survive a motion to dismiss." *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)). "[D]istrict courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021)).

**B.      Rule 12(b)(6): Failure to State a Claim upon Which Relief Can be Granted**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. For the purposes of a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

Federal Rule of Civil Procedure 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007) (quotations omitted). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that

is plausible on its face." *Id.* at 555, 570. This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557). To achieve factual plausibility, plaintiffs must allege more than "naked assertion[s] . . . without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation omitted).

### III.    DISCUSSION

Defendants challenge that Plaintiffs have had multiple opportunities in state and federal court to state a valid claim and that amendment would be futile. Although Plaintiffs sought a declaratory judgment in state court ordering Commissioner Brich to award relocation benefits under the VRAA, that claim was entirely under state law and thus different than the federal claims Plaintiffs have asserted in this Court. *See Fernandez*, 842 S.E.2d at 617. The Court thus declines to hold Plaintiffs' state suit and first Amended Complaint—filed by right—against them at this stage. However, the Court finds that leave to amend would be futile because the Proposed SAC would not survive a motion to dismiss.

### A.    Proposed Count I: Equal Protection Claim

Plaintiffs seek leave to amend their equal protection claim. Mot. Amend. at 4. In the first Amended Complaint, Plaintiffs alleged that Defendants violated their equal protection rights by denying their relocation benefit claims and by arbitrarily and capriciously stating that VDOT's June 15, 2018, letter constituted a final determination of their claims. *See* Order at 23 (citing Am.

Compl. ¶¶ 107, 134–35, 138, 142, 144; Am. Compl. Ex. U). The Court dismissed this claim for two reasons. First, Plaintiffs failed to allege an ongoing violation of their equal protection rights and request prospective relief, meaning the Eleventh Amendment barred their official-capacity claim against Defendants. Order at 24. Second, Plaintiffs failed to allege that Defendants violated a clearly established right with sufficient particularity to overcome Defendants' qualified immunity, barring Plaintiffs' individual-capacity claim. Order at 29–30.

Plaintiffs now allege that Defendants are violating Plaintiffs' equal protection rights by failing to award relocation benefits to Plaintiffs and failing to issue a final determination on Plaintiffs' benefit claims, neither of which Defendants denied to similarly situated persons. Proposed SAC ¶ 116. Plaintiffs clarify that VDOT's June 15, 2018, letter is not a final determination because it only approved a $255 reimbursement for the time that Dr. Fernandez spent planning the move but provided no determination on the approximately $567,000 in other reimbursable expenses they submitted to VDOT. Proposed SAC ¶¶ 55–57, Ex. U. Plaintiffs maintain that VDOT admitted the letter was not a final determination on those outstanding claims because the letter itself said VDOT cannot review Plaintiffs' claims further and because VDOT sent other letters requesting more information. *Id.* ¶¶ 55–64 (citing Exs. M, R, S, T, U, V, BB); *see* Pls.' Mem. Supp. at 5.

Plaintiffs also allege new facts regarding their communications with the Virginia Attorney General's office to demonstrate that they face an ongoing violation of their equal protection rights caused by discriminatory animus. Pls.' Mem. Supp. at 2. Plaintiffs reallege that they held a phone call with Virginia Deputy Attorney General Leslie Haley, where she "informed Plaintiffs that had Plaintiffs not hired attorneys to represent them, had not filed suit against VDOT, and had not tried to enforce their rights, VDOT would have paid more in relocation assistance and benefits."

7

Proposed SAC ¶ 78; *see* Am. Compl. ¶ 66. Plaintiffs now add that after the phone call, they continued to seek assistance from the Virginia Attorney General to obtain a final determination. Proposed SAC ¶ 79. Counsel for Plaintiffs met with Chief Deputy Attorney General Charles Slemp and Deputy Haley in January 2023, who said they would review the matter with VDOT personnel and follow up. *Id.* ¶ 81. But the following month, Chief Deputy Slemp said VDOT told him that Plaintiffs' matter "was not a priority for VDOT" and that no final determination would be forthcoming. *Id.* ¶ 82. Plaintiffs argue that VDOT thus admitted that it treated Plaintiffs differently than similarly situated persons simply because they hired legal counsel. Pls.' Reply at 6.

Finally, Plaintiffs allege that they are facing an ongoing threat of injury from Defendant's discriminatory treatment because they are still making payments on financing, including interest, obtained to cover the cost of the move. Proposed SAC ¶¶ 84–89, 150. Plaintiffs allege they would be able to immediately pay off their loan and interest once Defendants render a final determination awarding them the relocation benefits they have claimed. *Id.* ¶ 89.

Defendants contend that Plaintiffs fail to state a valid equal protection claim because they do not identify any similarly situated persons who received relocation benefits or a final determination. Defs.' Mem. Opp'n 8–9. Instead, Defendants argue, Plaintiffs imply that because the Virginia Attorney General's office said their claim was not a priority to VDOT and that they would have received greater reimbursements if they had not hired counsel, there must be other benefit applicants who did not hire lawyers but received more relocation benefits, or at least a final determination on their benefit claims. *See id.*; *see also* Proposed SAC ¶¶ 78–82, 116, 133–34, 137, 141–42. Defendants insist that this implication is insufficient to state a class-of-one equal protection claim.

8

Plaintiffs acknowledge that they have not attempted to identify specific comparators in their Proposed SAC. Pls.' Reply at 5–6. They argue instead that the Court did not dismiss their equal protection claim for lack of adequate alleged comparators, implying that their claim would have survived that defense. *Id.* But the Eleventh Amendment and qualified immunity foreclosed Plaintiffs' equal protection claim against Defendants in their official and individual capacities altogether, meaning the Court had no proper occasion to decide whether Plaintiffs sufficiently pled an equal protection claim in the original Amended Complaint. *See* Order at 23–24, 29–30. The Court's dismissal on those two grounds does not mean that Plaintiffs' equal protection claim must survive the sufficiently-specific-comparators challenge that Defendants now raise for the third time.[3]

Because Plaintiffs fail to identify similarly situated comparators, their equal protection claim fails the Rule 8 pleading standard and would not survive a Rule 12(b)(6) motion to dismiss.[4] The Equal Protection Clause of the Fourteenth Amendment states, "No State shall . . . deny to any person within its jurisdiction the equal protection of laws." U.S. Const. amend. XIV, § 1. "[T]o survive a motion to dismiss on an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that unequal treatment was the result of discriminatory animus." *Equity In Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011) (citing *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). "The Fourteenth Amendment countenances 'equal protection claims brought by a "class of one," but such claims are successful only 'where the plaintiff alleges that she has been

---

[3] Defendants raised this same argument in both of their prior motions to dismiss. ECF No. 8 at 24–26; ECF No. 19 at 25–27.

[4] Additionally, Plaintiffs do not explain how their amended equal protection claim overcomes Defendants' qualified immunity defense. *See* Order at 29–30. Amendment is therefore futile insofar as Plaintiffs attempt to sue Defendants in their individual capacities for equal protection violations.

intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Siena Corp. v. Mayor and City Council of Rockville, Md.*, 873 F.3d 456, 466 (4th Cir. 2017) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). In other words, "[a] class-of-one claim requires a showing that highly similar comparators received better treatment." *SAS Assocs. 1, LLC v. City Council for City of Chesapeake, Va.*, 91 F.4th 715, 723 (4th Cir. 2024).

Plaintiffs allege that they are "similarly situated" to others "who have been relocated as a result of the same road project . . . [and] as a result of other projects which VDOT constructs," but they do not identify any specific persons or businesses in this group that VDOT treated differently.[5] Proposed SAC ¶ 116; *see also id.* ¶¶ 132–33. These allegations are too conclusory to show that "highly similar comparators received better treatment." *SAS Assocs. 1*, 91 F.4th at 723; *see Siena Corp.*, 873 F.3d at 466 (affirming dismissal of class-of-one equal protection claim where plaintiff could not identify a similarly situated competitor); *Henderson v. Clarke*, No. 1:21cv 672 (TSE/JFA), 2022 WL 16922818, at *10 (E.D. Va. Nov. 14, 2022) (dismissing class-of-one claim where plaintiff failed to identify a similarly situated inmate that was treated differently); *Wilson v. Town of Mt. Jackson*, No. 5:21-cv-00055, 2022 U.S. Dist. LEXIS 47678, at *35 (E.D. Va. Mar. 17, 2022) (dismissing equal protection claim where plaintiff made "blanket allegations that he was treated worse than others similarly situated"). Thus, Plaintiffs' amended equal protection claim is futile.[6]

---

[5] Plaintiffs' blanket allegation that VDOT has a "policy and custom" of denying relocation benefits also weakens their claim that they were treated differently than other benefit applicants or displaced persons. Proposed SAC ¶ 114.
[6] Because Plaintiffs' proposed equal protection claim fails on 12(b)(6) grounds, the Court need not analyze whether Plaintiffs allege an ongoing equal protection violation and request prospective relief for purposes of § 1983 and the Eleventh Amendment. *See Ex parte Young*, 209 U.S. 123 (1908); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).

**B.      Proposed Count II: APA Review of URA Violations**

Plaintiffs also seek leave to amend to raise a new claim under the APA. Plaintiffs allege that Defendants' failure to provide a final determination is a violation of the URA and is judicially reviewable under the APA as a final agency action. Proposed SAC ¶¶ 152, 156, 161, 166, 175, 178. Defendants counter that an APA claim may only be brought against a federal entity, not state officials. Defs.' Mem. Opp'n at 10. But Plaintiffs maintain that the APA allows federal courts to review URA violations by state officials where the state agency receives federal funding to implement the URA's provisions. Pls.' Mot. at 6–7 (citing *Clear Sky Car Wash, LLC v. City of Chesapeake, Va.*, 910 F. Supp. 2d 861 (E.D. Va. 2012); *Appalachian Voices v. State Water Control Bd.*, 912 F.3d 746, 753 (4th Cir. 2019)).

The text of the APA only subjects federal agencies to judicial review, not state agencies. The APA makes judicial review available to "person[s] suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. "Agency" is defined as "each authority of the Government of the United States." § 701(b)(1); *see also* § 551(1). Thus, the APA's text does not authorize federal judicial review of actions taken by non-federal entities, such as state officials. *See also S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 331 n.5 (4th Cir. 2008) ("[B]y its terms, the APA applies only to federal agencies.") (citing *Karst Envtl. Educ. & Prot., Inc. v. EPA*, 475 F.3d 1291, 1296–98 (D.C. Cir. 2007); *Sw. Williamson Cnty. Cmty. Ass'n, Inc. v. Slater*, 173 F.3d 1033, 1035–36 (6th Cir. 1999)); *Appalachian Power Co. v. EPA*, 579 F.2d 846, 852 n.8 (4th Cir. 1978) ("Of course, the proceeding involved in this challenge was before a state agency and was not controlled by the Administrative Procedure Act."); *Dep't of Transp. & Dev. of La. v. Beaird-Poulan, Inc.*, 449 U.S.

11

971, 973 (1980) (Rehnquist, J., dissenting from denial of certiorari) ("[T]he APA is of course not applicable to state agencies.").

Even if the APA's text were not dispositive, Supreme Court and Fourth Circuit precedent confirm that neither Defendants nor VDOT are "federal entities" and thus are not subject to the APA. In *Kerpen v. Metropolitan Washington Airports Authority*, 907 F.3d 152 (4th Cir. 2018), the Fourth Circuit held that failure to establish a defendant as a "federal entity" under the Supreme Court's two-pronged test in *Lebron v. National Railroad Passenger Corporation*, 513 U.S. 374 (1995), is "fatal" to an APA claim. *Kerpen*, 907 F.3d at 152. Under the *Lebron* test, an entity must be "both created and controlled by the federal government [to] be considered [a] federal entit[y]." *Id.* at 158. An entity is "created" by the federal government when it is "created by a special statute, explicitly for the furtherance of federal governmental goals." *Id.* (quoting *Lebron*, 513 U.S. at 397). An entity is "controlled" by the federal government when its "operations are 'controlled' by federal government appointees." *Id.* (quoting *Lebron*, 513 U.S. at 396). "Temporary control" or "[m]ere influence" as an "influential stakeholder" are insufficient; "the federal government must be the 'policymaker' for the entity." *Id.* (citing *Lebron*, 513 U.S. at 398–99).

*Kerpen* held that the Metropolitan Washington Airports Authority ("MWAA") met neither *Lebron* prong. As a creation of Virginia and District of Columbia laws with only three federally appointed members on its seventeen-member Board of Directors, MWAA was neither created nor controlled by the federal government. *Id.* at 159. That MWAA leased property from the federal government, contracted with the federal government, faced federal oversight by the Secretary of Transportation, and received conditional federal funding were insufficient to turn MWAA into a federal entity. *Id.* at 159–60 (citations omitted). And because MWAA was a non-federal entity, the

APA had "little relevance" to MWAA since it only applies to "authorit[ies] of the Government of the United States." *Id.* at 160 (quoting 5 U.S.C. § 551(1)).

Plaintiffs cannot establish Defendants or VDOT as federal entities under the *Lebron* test. Plaintiffs explicitly allege that VDOT is a "State agency" that receives federal funding to provide displaced persons with relocation benefits.[7] Proposed SAC ¶ 14 (citing 42 U.S.C. § 4601(3), (11)). Yet state agencies still carry out their federally funded relocation programs "in accordance with State laws." 42 U.S.C. § 4604(a); *see also Norfolk Redev. & Hous. Auth. v. Chesapeake & Potomac Tel. Co. of Va.*, 464 U.S. 30, 32 (1983) ("The [URA] by its terms binds only federal agencies . . . In order to qualify for federal funds, . . . many states, such as Virginia, have adopted legislation modelled on the [URA]." (citing 42 U.S.C. § 4630)); *Fernandez*, 842 S.E.2d at 619 n.* (same). Congress does not "create" state agencies or the state laws under which they operate through the URA, nor does it "control" state agencies by granting federal funding. *See Kerpen*, 907 F.3d at 159–60. Therefore, Defendants are not federal entities under *Lebron*, and *Kerpen* forecloses Plaintiffs' proposed APA claim. *See Potomac Constr. Co. v. Wash. Metro. Area Transit Auth.*, No. GLS-21-193, 2021 WL 1516058, at *11 ("[B]ecause WMATA does not satisfy both prongs of *Lebron*, it is not a federal entity. It follows, *a fortiori*, that WMATA is not an 'authority of the Government of the United States' within the meaning of § 701(b)(1) of the APA.").

Plaintiffs rely on *Clear Sky Car Wash, LLC v. City of Chesapeake, Va.*, 910 F. Supp. 2d 861 (E.D. Va. 2012), for its holding that "the APA is the exclusive remedy for alleged violations

---

[7] The URA defines "State agency" as "any department, agency, or instrumentality of a State or of a political subdivision of a State, any department, agency, or instrumentality of 2 or more States or of 2 or more political subdivisions of a State or States, and any person who has the authority to acquire property by eminent domain under State law." 42 U.S.C. § 4601(3). "Displacing agency" is defined as "any Federal agency carrying out a program or project, and any *State, State agency,* or person carrying out a program or project with Federal financial assistance, which causes a person to be a displaced person." § 4601(11) (emphasis added); *see also* Proposed SAC ¶ 14 (alleging VDOT is a "State agency" and "displacing agency").

of" the URA. *Clear Sky*, 910 F. Supp. 2d at 884; *see also id.* at 879–80. Yet *Clear Sky* does not hold that the APA authorizes federal judicial review of non-federal entity action.

In relevant part, the *Clear Sky* plaintiffs sued the City of Chesapeake, the City's Right of Way Manager, VDOT, and the United States Department of Transportation ("USDOT") for alleged violations of the URA's relocation reimbursement policies.[8] *Clear Sky*, 910 F. Supp. 2d at 866, 869; *see* 42 U.S.C. § 4621 *et seq.* The plaintiffs sought judicial review under the APA but conceded that they never applied for relocation benefits, which meant they failed to exhaust their administrative remedies and no agency action occurred. *Clear Sky*, 910 F. Supp. 2d at 881, 883–84. Without an agency action to evaluate, the district court held it had no jurisdiction under the APA to consider the claim.[9] *Id.* at 881 (citing 5 U.S.C. § 704). *Clear Sky* did not hold that the APA provides a federal court with jurisdiction to consider URA violation claims against state officials; it simply never reached that analysis because it dismissed the claim for other jurisdictional flaws.[10]

---

[8] That *Clear Sky* included USDOT as a federal defendant also distinguishes it from Plaintiffs' case. The URA authorizes USDOT to promulgate rules and regulations to implement its statutory provisions. *See* 42 U.S.C. § 4633(a)(1); Memorandum for the Heads of Executive Departments and Agencies, 50 Fed. Reg. 8953 (Feb. 27, 1985) (designating USDOT as lead agency under URA); 49 C.F.R. § 24.1. Although the district court in *Clear Sky* did not explicitly cabin its APA analysis to USDOT, the fact that the plaintiffs sued the federal agency responsible for implementing the URA made their APA claim relevant to at least one defendant. Here, Plaintiffs do not propose to add any federal entities as defendants, let alone USDOT.

[9] On appeal, the *Clear Sky* plaintiffs pursued their APA claim against USDOT for failing to enforce certain URA policies, but the Fourth Circuit held that the plaintiffs never properly pled an APA claim at all. *Clear Sky Car Wash LLC v. City of Chesapeake, Va.*, 743 F.3d 438, 445 (4th Cir. 2014). Therefore, Plaintiffs' argument that the district court's jurisdictional analysis supports applying the APA to state and local entities is even less persuasive here.

[10] The other cases that *Clear Sky* cites which hold that the APA is the exclusive vehicle to pursue URA violations also do not support APA review of actions by non-federal entities. *See Ackerley Commc'ns of Fla., Inc. v. Henderson*, 881 F.2d 990 (11th Cir. 1989) (dismissing URA claim brought under § 1983 against state official because APA is exclusive jurisdictional vehicle to review URA violations, but not stating whether APA review of the state official's actions would be available); *Wallace v. Chicago Hous. Auth.*, 298 F. Supp. 2d 710, 723 (N.D. Ill. 2003) (dismissing URA claim because plaintiffs brought action under § 1983 and failed to allege a claim under the APA); *Ledesma v. Urb. Renewal Agency of City of Edinburg, Tex.*, 432 F. Supp. 564, 565–67 (S.D. Tex. 1977) (reviewing denial of relocation benefit claim by United States Department of Housing and Urban Development and holding that one of the Department's key decisions was not based on substantial evidence); *Barnhart v. Brinegar*, 362 F. Supp. 464, 472–73 (W.D. Mo. 1973) (finding no judicial review available under the APA over URA real property acquisition practices because the URA expressly eliminates rights and liabilities under that section, meaning nobody can be adversely affected or aggrieved by agency action under that section of the URA). (continued)

14

Plaintiffs further contend that the Fourth Circuit reviewed state agency action pursuant to the APA in *Appalachian Voices v. State Water Control Board*, 912 F.3d 746, 753 (4th Cir. 2019). Yet in *Appalachian Voices*, the petitioner's cause of action and the Court's jurisdiction came not from the APA, but the Natural Gas Act, which explicitly grants jurisdiction to review orders or actions of state administrative agencies. 912 F.3d at 752; 15 U.S.C. § 717r(d)(1) ("The United States Courts of Appeals . . . shall have original and exclusive jurisdiction over any civil action for the review of an order or action of a Federal agency . . . *or State* administrative agency acting pursuant to Federal law . . ." (emphasis added)). Indeed, the Fourth Circuit applied the APA's arbitrary and capricious standard of review over the state respondents' objection that the APA did not apply to them. *Appalachian Voices*, 912 F.3d at 754, n.1. But the Fourth Circuit explicitly declined to resolve the objection because petitioners' claim would have failed under the states' preferred "substantial evidence" standard of review, just as it failed arbitrary and capricious review. *Id.* at 754 n.1, 759; *see also Sierra Club v. State Water Control Bd.*, 898 F.3d 383, 403 n.13 (4th Cir. 2018) (declining to resolve the same objection in an NGA case for the same reason). Given the Fourth Circuit's distinct NGA jurisdiction and its declination to resolve the states' APA objection, the Court does not read *Appalachian Voices* to authorize judicial review under the APA in this case. The APA's text and other Fourth Circuit precedent make clear that the APA does not

---

The Court is aware of two cases applying APA review to state or local entity denials of URA benefits without including a federal-entity defendant. *See Kroger Co. v. Reg'l Airport Auth. of Louisville & Jefferson Cnty.*, 286 F.3d 382, 387 (6th Cir. 2002) (finding the district court "properly applied the [APA's] arbitrary or capricious standard of review" to a "quasi-municipal entity['s]" denial of URA relocation benefits); *Supreme Oil Co. v. Metro. Transp. Auth.*, 157 F.3d 148, 150–51 (2d Cir. 1998) (applying APA's arbitrary and capricious standard to denial of URA relocation benefits by local entities). These cases still do not persuade the Court that Plaintiffs may obtain judicial review of Defendants' actions under the APA. Neither *Kroger* nor *Supreme Oil* analyzed whether the APA applied to local entity actions. Both cases appear to assume that because the local entities administered relocation programs or grants pursuant to the URA, their actions were subject to APA review. *See Kroger*, 286 F.3d at 385–87; *Supreme Oil*, 157 F.3d at 150–51. But these acts alone are insufficient to qualify as a "federal entity" under *Lebron*, and *Kerpen* holds that such failure is "fatal" to an APA claim. *See Lebron*, 513 U.S. at 397–98; *Kerpen*, 907 F.3d at 158–60. This Court must follow *Kerpen*'s instructions.

15

give federal courts jurisdiction to hear claims against non-federal entities. *Limehouse*, 549 F.3d at 330 (citing 5 U.S.C. § 701); *Kerpen*, 907 F.3d at 160.

Finally, Plaintiffs argue that Congress provided for judicial review of federal or state agency actions under the URA. Pls.' Reply at 7. Plaintiffs cite an implementing regulation promulgated by USDOT, however, and they do not identify any URA provisions entitling them to judicial review. *Id.* (citing 49 CFR § 24.10(g)). Additionally, that regulation does not authorize federal judicial review over state agencies, but rather directs agencies—federal or state—to decide appeals submitted by benefit applicants and to "advise" applicants of their right to judicial review of those agency appellate decisions.[11] 49 C.F.R. § 24.10(g); *see also* § 24.2 (defining "Agency" as "the Federal Agency, State, State Agency, or person that acquires real property or displaces a person"). Further, although the Virginia Administrative Process Act and the regulations implementing the VRAA provide for state judicial review of VDOT's benefit determinations, neither authorizes federal judicial review, even when read alongside the URA's implementing regulations. *See* 24 V.A.C. § 30-41-90; Va. Code §§ 2.2-4026, -4029.

Because neither Defendants nor VDOT are "authorit[ies] of the Government of the United States," the Court has no jurisdiction under the APA to review the Defendants' alleged denial of relocation benefits or failure to issue a final determination.[12] 5 U.S.C. § 701(b)(1). Granting leave to amend to add Plaintiffs' proposed APA claim would be futile.

---

[11] "Promptly after receipt of all information submitted by a person in support of an appeal, the Agency shall make a written determination on the appeal . . . . If the full relief requested is not granted, the Agency shall advise the person of his or her right to seek judicial review of the Agency decision." 49 CFR § 24.10(g).
[12] Without jurisdiction, the Court need not analyze whether Plaintiffs exhausted their administrative remedies or whether exhaustion would have been futile.

16

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Amend (ECF No. 26) is **DENIED.**

The Court **DIRECTS** the Clerk to provide a copy of this Memorandum Opinion and Order

to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
June 2 , 2024

Raymond A. Jackson
United States District Judge